**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Elizabeth E. Brown

| | |
|---|---|
| In re: <br><br> LARRY IVAN BEHRENDS, <br><br> Debtor. | Bankruptcy Case No. 13-22392 EEB <br><br> Chapter 7 |
| JOLI A. LOFSTEDT, Chapter 7 Trustee, <br><br> Plaintiff, <br><br> v. <br><br> VICKI L. OLETSKI-BEHRENDS, and 21ST CENTURY FINANCIAL SERVICES, LLC, <br><br> Defendants. | Adversary Proceeding No. 14-1377 EEB |

**DEFENDANT VICKI L. OLETSKI-BEHRENDS'S MOTION TO RECONSIDER ORDER ON COMPLAINT**

Defendant Vicki L. Oletski-Behrends ("VB"), by and through her attorney Michael J. Davis of DLG Law Group LLC, hereby files this motion respectfully urging the Court to reconsider its Order on Complaint and, in support thereof, states as follows:

**SUMMARY OF ORDER**

On April 10, 2017, the Court issued its Order on the Chapter 7 Trustee's Complaint against VB. (*See generally* Order Compl., Dkt No. 94 (hereinafter "Order")). Pursuant to 11 U.S.C. § 544(b), the Trustee claimed avoidance of money transfers from Debtor to VB which occurred between 2007 and 2010 in the amount of $357,695.22. (*Id.*) Pursuant to 11 U.S.C. § 544(a), the Trustee also sought to impose resulting or constructive trusts on certain assets titled

1

in VB's name, including: (1) three vehicles, each purchased in 2007; (2) one residence ("the Residence"), purchased with a down payment in 2004, which carries an existing mortgage; and (3) another home ("the 21st Street property"), which was paid off in 2002, but which VB used as collateral to obtain a new loan in 2015. (*Id.* at 6-7.)

The Court entered judgment against VB on most, but not all, of the Trustee's claims. (Order.) The Court entered judgment avoiding transfers in the amount of $238,695 as fraudulent transfers. (*Id.*) The Court found that, as it related to the fraudulent transfer claim, the Trustee could reap the benefit of the ten year statute of limitations applicable to the Internal Revenue Service (IRS). (*Id.* at 9-11.) The Court then found sufficient evidence of fraudulent intent to establish a violation of the Colorado Uniform Fraudulent Transfer Act (CUFTA) in the amount of $238,695. (*Id.* at 11-17.) The Court arrived at this amount by subtracting out $39,000—what the Court found was an accurate representation of VB and Debtor's annual joint living expenses—from the transfer total each year from 2007 to 2010. (*Id.* at 14.) In 2007, the transfers exceeded living expenses by $210,300 and, in 2008, the transfers exceeded living expenses by $28,395. (*Id.*) In 2009 and 2010 the total transfers were less than living expenses, so the Court did not include transfers from those years in the final award. (*Id.*)

As to the implied trusts, the Court imposed a resulting and/or constructive trust for the benefit of the estate on the three vehicles, the Residence (subject to outstanding liens), and one-half of the 21st Street Property (subject to outstanding liens). (Order at 17-32.) The Court found that the trustee had met the heightened standard applicable to resulting trusts as it applied to both homes and the cars, despite certain complications the Court acknowledged. (*Id.* at 20-22.) The Court further found that the same facts justified imposing a constructive trust on the assets. (*Id.*

at 22-23.) Finally, the Court considered, and dismissed, several defenses. (*Id.* at 23-31.) First, the Court rejected VB's argument that the trusts were merely remedies, not claims, finding that a constructive trust equated to an unjust enrichment claim and a resulting trust was its own claim. (*Id.* at 23-25.) Second, the Court rejected VB's *in pari delicto* defense, because the Court found the Trustee asserted creditor claims, not claims of the debtor. (*Id.* at 26-28.) Finally, the Court found that VB's statute of limitations defenses didn't apply because, in the case of constructive trusts, the accrual couldn't begin before the petition date and, in the case of resulting trusts, the accrual began at the Debtor's filing of schedules. (*Id.* at 28-31.)

## ARGUMENT

### I. Standard of Review

VB brings this post-judgment motion for reconsideration under Fed. R. Civ. P. 52 and 59, made applicable in this adversary proceeding by Bankr. R. Civ. P. 7052 and 9023. *See Dalton v. First Interstate Bank of Denver*, 863 F.2d 702, 703-04 (10th Cir.1988) ("post-judgment motions filed within ten days of the final judgment should, where possible, be construed as Rule 59(e) motions"); Bankr. R. Civ. P. 9023 (2009 Comm. Notes) (rule change from ten to fourteen days). A motion under Fed. R. Civ. P. 59 may be brought to "correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The Tenth Circuit has defined clear error as "an arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1235 (10th Cir. 2001) (discussing abuse of discretion standard). Although the Tenth Circuit has not precisely defined "manifest injustice" within the context of Rule 59(e), the term is described within this district as "direct, obvious, and observable error." *Hadley v. Hays Medical Center*, 14-1055-

KHV (D. Kan. Feb. 27, 2017) (citing Tri-*State Truck Ins., Ltd. V. First Nat'l Bank of Wamego*, No. 09-4158-SAC, at *3 (D. Kan. Oct. 6, 2011)). Whether to grant a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988).

## II. *Summary of Issues on Motion for Reconsideration*

Respectfully, the Court's Order contains errors of law and erroneous application of law to facts. The Order errs with regard to its determination on fraudulent transfers by failing to fully credit VB the appropriate amount of living expenses from 2007-2010 against the total transfers, since VB paid household expenses with savings from previous years. The Order errs with regard to its analysis of resulting trusts because the Trustee did not meet her evidentiary burden as to each of the assets. The Order errs with regard to its analysis of constructive trusts because the Trustee did not meet her burden to trace each fraudulent transfer that formed the basis for the Court's imposition of a constructive trust. Moreover, the Order errs by ordering what amounts to double-recovery in favor of the Trustee and against VB in, at minimum, the amount of house payments and car purchases that overlap with the 2007-2010 transfers. In sum, VB asks the Court to revise the Judgment by (a) reducing the amount of the money judgment from $238,695 to $201,695 to account for the total living expenses during 2007-2010, and (b) revising the implied trust award to instead reflect an equitable lien in an amount that is actually traceable and which does not overlap with the Trustee's recovery on the fraudulent transfers.[1]

---

[1] VB reserves the right to challenge all other aspects of the Order and Judgment on appeal, including the Court's determination that the statute of limitations on fraudulent transfers is governed by the IRS's ten year reach back and that there was sufficient evidence of Debtor's intent to defeat creditors under CUFTA. Further, VB asserts that the Order contains additional errors which may not directly affect the judgment amount and therefore are not being raised here

4

### III. *Fraudulent Transfers*

Given its finding of fraudulent intent, the Court should have ordered avoided $201,695 in fraudulent transfers from Debtor to VB instead of $238,695.

VB admitted that she received the following in transfers from Debtor: $249,300.05 in 2007; $67,395.17 in 2008; $25,000 in 2009; and $16,000 in 2010. (Order at 8.) The Court awarded the Trustee the amount of these transfers less annual joint household expenses, which the Court determined reflected reasonably equivalent value. (*Id.* at 14, 16.) Based on an IRS Form 433-A submitted by Debtor, the Court found $3,250 to be reliable evidence of monthly household expenses for that period, which the Court annualized to $39,000. (*Id.* at 14.)

In arriving at its $238,695 figure for fraudulent transfers less joint household expenses, the Court subtracted household expenses only from years where the Debtor transferred more than $39,000 to Defendant. (*Id.*) Yet, elsewhere in its Order, the Court acknowledged that Debtor was VB's only source of income (*e.g., id.* at 21); that VB paid household expenses from her account (*e.g., id.* at 20-21); and that VB would save money in her account to pay future expenses (*e.g., id.* at 14). Therefore, it is reasonable to assume that VB paid at least $39,000 each year in joint household living expenses from the money that Debtor transferred. That equates to a total of $156,000 in joint household living expenses from 2007 to 2010, which reflects the reasonably equivalent value that Debtor obtained for the transfers. In 2009 and 2010, since Debtor did not transfer sufficient funds to pay all household expenses, VB would have used money from previous transfers.

---

including (1) resulting trusts are properly considered debtor's claim as opposed to creditor's claims; (2) the appropriate statute of limitations for both constructive and resulting trusts is when the claimant is on notice of injury; and (3) a constructive trust is disfavored in bankruptcy.

Therefore, the total amount of living expenses for 2007-2010 ($156,000) should be subtracted from transfers ($357,695) to equal $201,695 in transfers less reasonably equivalent value.

## IV. *Implied Trusts*

The Court should not impose a resulting or constructive trust on any of the assets. The Trustee did not meet her burden under the resulting trust analysis to show that it was Debtor's intent at the time of transfer to retain a beneficial interest in each of the assets. In addition, the Trustee did not meet her burden to trace each fraudulent transfer that formed the basis for the Court's imposition of a constructive trust.

### A. Resulting Trust Analysis

In its analysis on resulting trusts, the Court stated that it must "consider the particular facts and circumstances in an effort to deduce the debtor's intent at the time of the conveyance and to subject that evidence to a heightened standard of proof before overcoming the presumption of a gift." (Order at 20.) The Trustee has the burden to overcome this presumption by clear and clear and convincing evidence. *See Pate v. United States Dept. of Treasury I.R.S.*, 949 F.2d 1059, 1061 (10th Cir. 1991) (Oklahoma law). The appropriate inquiry is into intent at the time of transfer and not subsequent intent. *Taylor v. Rupp (In re Taylor)*, 133 F.3d 1336, 1341 (10th Cir. 1998). The evidence here doesn't meet this heightened standard.

The Court found that evidence offered in support of a resulting trust included testimony from third parties that Debtor placed title in assets in VB's name to shield them from creditors and that he claimed deductions on his tax returns. (Order at 20.) However, the Court's analysis doesn't look at the evidence vis-à-vis each asset with sufficient detail. The testimony from Mr.

6

Guyette and the letter to Mr. Ruden concerning Debtor's intent to shield assets from creditors (*id.*) goes perhaps to the imposition of a constructive trust, but it does not relate to Debtor's intent to retain a beneficial or equitable interest in any of the assets. The testimony from Mr. Witwer and Debtor himself concerning proceeds from Conifer Ridge (*id.*) similarly does not relate to any of the assets in question, i.e. the cars or either home. Finally, Debtor's testimony that he took deductions for assets on his tax return (*id.*, citing Tr. II at 64:20-68:7) relates only to the Jaguar and the Cadillac, which he claimed for business (not personal) use. Tr. II at 64:20-68:7. In sum, Trustee did not present clear and convincing evidence of Debtor's intent to retain a beneficial interest in any of the individual assets.

Specifically, as it relates to the 21st Street Property, the evidence does not overcome the presumption that Debtor's intent at the time of the presumptive payments was to gift the property to his wife. The Court acknowledges the general absence of evidence concerning the 21st Street Property, including an absence of testimony concerning repayment of the mortgage and the mortgage payments from 1989 to 1995. (Order at 21-22.) The Court also acknowledged that it had no way to quantify the proportional interest of Debtor and VB as it related to the 21st Street Property. (*Id.* at 22.) While the Court attempted to reach a fair result by imposing a resulting trust on only half of the 21st Street Property, the correct application of the law would have been to find that the Trustee did not overcome the heightened evidentiary standard to show that Debtor in fact paid for the property—a prerequisite for a purchase money resulting trust—let alone had intention to retain a beneficial interest. *See First Nat. Bank of Denver v. Harry W. Rabb Foundation*, 479 P.2d 986, 989 (Colo. App. 1970) ("A resulting trust carries into effect the presumed intent of the parties while a constructive trust defeats the intent of one of them.") In

7

fact, the weight of evidence indicates that VB intended to retain the beneficial interest, because she mortgaged the 21st Street Property to obtain a loan in 2015. Thus, the Court's conclusion concerning the 21st Street Property was in error.

In sum, the evidence does not meet the heightened standard to impose a resulting trust on any of the assets.[2]

### B. Constructive Trust Analysis

The Trustee also did not meet her burden to trace each payment or transfer that formed the basis for the Court's imposition of a constructive trust as to each of the assets. "To warrant imposition of a constructive trust over the property of a debtor, a claimant must (1) show fraud or mistake in the debtor's acquisition of the property; and (2) be able to trace the wrongfully held property." *In re Foster & Hill v. Kinzler*, 275 F.3d 924, 926-27 (10th Cir. 2001). The claimant seeking imposition of a constructive trust has the burden to "trace 'tainted funds' to identifiable res." *McCullough v. Young*, 947 F.2d 953, 953 (10th Cir. 1991); *accord Lawry v. Palm*, 192 P.3d 550, 562 (Colo. App. 2008) ("For the court to impose a constructive trust, there must be some property to which the trust attaches."). The Court acknowledged in its Order that "[i]n addition to proving wrongdoing and/or unjust enrichment, some courts also discuss the need to trace the wrongfully held property to the transferor's funds or property" (Order at 22), yet the Court did not recognize this as a firm rule or undertake an effort to trace the wrongfully held property.

---

[2] To the extent the Court maintains that Debtor has equitable interest in one of the properties, Debtor would be entitled to claim a homestead exemption under Colorado law on her primary residence. *See In re Kester*, 493 F.3d 1208 (10th Cir. 2007) (discussing Kansas homestead exemption in relation to resulting trust); *United States v. Morgan*, 554 F. Supp. 582 (D. Colo. 1982) (Colorado homestead law).

In this case, the Trustee does not show how any wrongfully taken property attaches to each of the assets. The Court found that the same facts supporting the imposition of a resulting trust support the imposition of a constructive trust, i.e. the Debtor's intent to hide his assets from creditors. (*Id.* at 22-23.) However, the Court did not review whether and to what extent the Trustee traced each allegedly wrongful payment or transfer to the individual assets in question.

In particular, there is no evidence in the record tracing payments from Debtor to VB for the 21st Street Property. VB is entitled to her contribution toward the property, which should be absolute in absence of any evidence to the contrary. *See In re Marriage of Allen*, 724 P.2d 651, 660 (1986) ("However, an innocent donee is liable only to the extent to which she is unjustly enriched at the time when she acquires notice of the equitable ownership of the other party. Moreover, the donee may be entitled to reimbursement for improvements she makes or value she contributes to the product of the wrongfully obtained property.") (internal citations omitted).

The Colorado Court of Appeals has refused to impose a constructive trust when a claimant failed to trace wrongfully-taken property to a specific res. In *State v. Benjamin*, the Court of Appeals refused to impose a constructive trust because plaintiff failed to trace property wrongfully taken to proceeds that it claimed had resulted from the sale of the wrongfully-taken property. 587 P.2d 1207, 1209 (Colo. App. 1978). Specifically, the Court found that the funds had been comingled with other sources of funds and, therefore, it was impossible to determine how much of the wrongfully obtained funds were used for which purpose. *Id.* The Tenth Circuit reached a similar conclusion in *McCullough v. Young*. 947 F.2d at 953 ("Appellant must establish that Brio loan funds were used, even if only in part, to purchase or improve the

9

Appellees' homestead property. Appellant presented no evidence that connected the Brio loan funds with any certainty to Appellees' homestead.") (internal citations omitted).

Even if the Court imposes any constructive trust, it should only be to the extent that the Trustee has traced a fraudulent transfer or payment to an asset.[3] However, this would result in an impermissible double recovery, as will be discussed next. *Shepler v. Whalen*, 119 P.3d 1084, 1089 (Colo. 2005) (constructive trusts are "fraud-rectifying trusts" that are imposed in cases of fraudulent transfers, breach of contractual or fiduciary obligation, fraud, or other wrongdoing); *accord In re Taylor*, 133 F.3d at 1336 (seeking to void fraudulent transfer or, in the alternative, impose constructive or resulting trust).

### V.     *Double Recovery*

To the extent the Trustee is able to trace wrongful transfers to VB's assets, these would significantly overlap with the funds covered by the judgment avoiding money transfers in the amount of $238,695. The Court awarded Trustee recovery of all transfers 2007-2010, less living expenses, plus an implied trust for the on the assets, which were in part purchased with funds included in the 2007-2010 transfers. The Court did not account for this double recovery.

The money transfers from Debtor to VB during the 2007 to 2010 period overlap in time with VB's purchase of the cars and mortgage payments on the residence. The Court found that VB used Debtor's funds to purchase Jaguar and the Corvette, using funds from her account. The

---

[3] If the Court determines that Trustee has met its burden to trace certain fraudulent payments to VB's assets but not to the extent of their entire value, the proper remedy is an equitable lien, rather than a constructive trust. *See Hoxworth v. Blinder*, 170 B.R. 438 (D. Colo. 1994) ("The primary distinction between an equitable lien and a constructive trust is that 'the beneficiary of a constructive trust receives title to the trust property, [whereas] a plaintiff who receives an equitable lien obtains merely a security interest in the property held by the defendant.'") (citing *In Re Marriage of Allen*, 724 P.2d 651, 658 (Colo.1986)).

Court also found that Debtor wrote checks to pay the mortgage payments from her account. The mortgage was $2,466 per month.

Thus, to the extent that the Court agrees with the Trustee that VB "wrongfully" or "unjustly" obtained an interest in the assets, it was through specific funds that she obtained from Debtor. She has already been penalized for some of these funds by the Court's judgment avoiding the transfer. Any judgment should be set off by the value of the assets purchased using the funds or, alternatively, any lien in the assets should be limited to amounts actually traceable to Debtor that fall outside the 2007-2010 transfers.

To do otherwise would mean that the Trustee obtains a windfall. Had Debtor never transferred any funds or assets to VB, the estate would include <u>either</u> the funds used to purchase the assets <u>or</u> the assets, but not both. This rule is confirmed by the holding in *Miller v. Kaiser*, 433 P.2d 772 (Colo. 1967). In *Miller*, the Colorado Supreme Court, considered a claim of a judgment creditor seeking to set aside a fraudulent conveyance, made the following statements concerning remedies for fraudulent conveyance:

> The primary remedy in an action for fraudulent conveyance is a declaration that the fraudulent conveyance is void as to the judgment creditor. [. . .] It becomes axiomatic therefore after analyzing this equitable remedy that a judgment creditor cannot in a fraudulent conveyance action be the recipient, as against the fraudulent transferor, of a money judgment, for the very basis of this action is the judgment debt he is endeavoring to collect. [. . . ] To award the judgment creditor a money judgment would amount to an increase in the judgment debt owed to the judgment creditor by the fraudulent transferor.

*Id.* at 775. *Miller* stands for the proposition that one cannot seek to have the res returned to the estate and also collect a judgment on the fraudulent transfer. That same logic applies to prohibit recovery of both the property purchased with "fraudulently transferred" funds and the funds themselves.

## CONCLUSION

WHEREFORE, VB respectfully asks the Court to reconsider and revise the Judgment by (a) reducing the amount of the money judgment from $238,695 to $201,695 to account for the total reasonably equivalent value during 2007-2010, and (b) revising the implied trust award to instead reflect an equitable lien in an amount that is actually traceable and which does not overlap with the Trustee's recovery by avoidance of the fraudulent transfers.

Dated: April 24, 2017

**DLG Law Group LLC**

*/s/ Michael J. Davis*
Michael J. Davis
Atty. Reg. No. 44287
4100 E. Mississippi Avenue, Suite 420
Denver, CO 80246
Phone: (720) 361-6036
Fax: (303) 758-5055
mdavis@dlglaw.net
Counsel for Vicki Oletski-Behrends

## CERTITIFCATE OF SERVICE

The undersigned hereby certifies that on this 24th day of April, 2017, a true and correct copy of the foregoing was duly served via First class mail, e-mail and/or ECF as applicable to the parties below:

J. Brian Fletcher
Onsager Fletcher Johnson
1801 Broadway, Suite 900
Denver, CO 80202
jbfletcher@ofjlaw.com

Vicki Oletski-Behrends
4635 21st Street Circle
Greeley, CO 80634

*/s/ Michael J. Davis*
Michael J. Davis