# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | Case No. 13-22392 EEB |
| LARRY IVAN BEHRENDS ) | |
| SSN: XXX-XX-2396 ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| ) | |
| ) | |
| ) | |
| JOLI A. LOFSTEDT, as chapter 7 trustee for the ) | Adversary Case No. 14-1377 EEB |
| bankruptcy estate of Larry Ivan Behrends, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| VICKIE L. OLETSKI-BEHRENDS, and 21ST ) | |
| CENTURY FINANCIAL SERVICES, LLC ) | |
| ) | |
| Defendants. ) | |

## RESPONSE TO DEFENDANT VICKI L. OLETSKI-BEHRENDS' MOTION TO RECONSIDER ORDER ON COMPLAINT

Joli A. Lofstedt, chapter 7 trustee ("Trustee") of the bankruptcy estate of Larry Ivan Behrends ("Debtor"), files this Response to Defendant Vicki L. Oletski-Behrends' Motion to Reconsider Order on Complaint as follows:

### I.   INTRODUCTION

On April 10, 2017, this Court granted judgment in favor of Trustee and against the defendant, Debtor's non-filing spouse, Vickie L. Oletski-Behrends ("Mrs. Behrends"). Pursuant to the judgment, the Court avoids fraudulent transfers in the amount of $238,695.00 and imposes a resulting trust and/or constructive trust on two houses and three luxury vehicles that were titled solely in the name of Mrs. Behrends. Unsurprisingly, Mrs. Behrends now asks this Court to reconsider its judgment. This request comes after three years of unnecessarily protracted litigation which included a failed effort by Mrs. Behrends to withdraw the reference and pursue an appeal to the 10th Circuit Court of Appeals, a two-day trial and the Court issuing a detailed thirty-two page Order to accompany the judgment. As set forth below, Mrs. Behrends request must be denied.

Not only does Mrs. Behrends fail to establish grounds for a motion pursuant to Fed. R. Civ. P. 59(e), each of the separate grounds for the Motion fail as well. Mrs. Behrends does not demonstrate that the Court has misapprehended the facts or the controlling law. Mrs. Behrends does not demonstrate that the Court erred in crediting Mrs. Behrends with living expenses and generously offsetting such living expenses against the actual fraudulent transfers. Mrs. Behrends fails to demonstrate that the Court erred as to the evidentiary burden necessary for the Court to impose a resulting and/or constructive trust and Mrs. Behrends utterly fails to demonstrate that the judgment results in double-recovery. In short, Mrs. Behrends request fails on every level and therefore Mrs. Behrends' request must be denied.

## II. BACKGROUND

On July 17, 2014, Trustee commenced this adversary proceeding by filing her Complaint [Docket No. 1] and naming Mrs. Behrends and 21st Century Financial Services, LLC as defendants.

On May 5, 2016 and May 6, 2016, the Court conducted a two-day evidentiary hearing. During the hearing, the Trustee introduced over 100 exhibits, thousands of pages in length, and the Court heard testimony from six (6) witnesses.

On April 10, 2017, this Court issued its Order on Complaint (the "Order") along with an accompanying Judgment. The Order contains thirty-two pages of detailed findings and conclusions. Pursuant to the Order, the Court entered judgment in favor of Trustee and against Mrs. Behrends. Pursuant to the Judgment, the Court avoids money transfers to Mrs. Behrends in the amount of $238,695.00 and imposes a constructive and/or resulting trust for the benefit of the estate on:

    a.    a 2004 Jaguar VIN: SAJWA74C14SG24201;
    b.    a 2005 Chevrolet Corvette VIN: 1G1YY34UX55121972;
    c.    a 2008 Cadillac Escalade VIN: 3GYFK62808G102491 (with the 2004 Jaguar, the 2005 Chevrolet Corvette, and the 2008 Cadillac Escalade, the "Vehicles");
    d.    real property located at 4635 W. 21st Street Circle, Greeley, Colorado (the "Residence"); and
    e.    a fifty-percent interest in real property located at 2010 21st Street, Greeley, Colorado (the "21st Street Property").

On April 24, 2017, in lieu of an appeal, Mrs. Behrends filed her Motion to Reconsider Order on Complaint (the "Motion") [Docket No. 98]. In the Motion, Mrs. Behrends asks this Court to reconsider the Order and Judgment, arguing that the Court erroneously: (i) calculated the supposed "reasonably equivalent value" Debtor received on account of the Transfers, (ii) imposed an implied trust on the Vehicles, the Residence, and the 21st Street Property, and (iii) awarded Trustee what Mrs. Behrends claims amounts to a double recovery. As explained below, Mrs. Behrends' argument fails for multiple reasons, and the Motion should be denied in its entirety.

### III. ARGUMENT

Under Fed. R. Civ. P. 59(e), the Court may alter or amend the Judgment "where there has been an intervening change in the controlling law, new evidence that was previously unavailable has come to light, or the Court sees a need to correct clear error or prevent manifest injustice." *Brumfiel v. U.S. Bank*, No. 12-CV-02716-WJM-MEH, 2014 WL 4056559, at *1 (D. Colo. Aug. 14, 2014). In other words, "a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Motions under Rule 59(e), however, "are regarded with disfavor . . . [and are] not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Brumfiel*, 2014 WL 4056559, at *1. As a result, relief under Rule 59(e) "is an extreme remedy" that should be granted only in "rare circumstances." *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-CV-2528, 2010 WL 2802649, at *1 (D. Colo. July 15, 2010), *aff'd,* 490 F. App'x 86 (10th Cir. 2012).

Here, there is no "rare circumstance" warranting a modification of the Order and Judgment. After trial, the Court took the matter under advisement and issued a reasoned opinion with detailed factual findings and analysis of the relevant law. The Court did not commit "clear error" and the Order and Judgment do not result in "manifest injustice." As a result, the Motion should be denied, and the Order and Judgment should stand.

### A. The Money Transfers

Trustee sought to avoid cash transfers from Debtor to Mrs. Behrends in the total amount of $357,695.22 as both actual and constructive fraudulent conveyances, which amounts were transferred to Mrs. Behrends as follows:

| Check Date | Amount of Transfer |
|---|---|
| 4/18/2007 | $50,000.00 |
| 4/13/2007 | $3,045.92 |
| 5/1/2007 | $2,754.13 |
| 7/16/2007 | $50,000.00 |
| 12/28/2007 | $70,000.00 |
| 12/31/2007 | $73,500.00 |
| **Total Transferred in 2007:** | **$249,300.05** |
| 1/15/2008 | $14,321.50 |
| 1/17/2008 | $3,073.67 |
| 10/4/2008 | $30,000.00 |
| 12/26/2008 | $20,000.00 |
| **Total Transferred in 2008:** | **$67,395.17** |
| 4/27/2009 | $10,000.00 |
| 10/3/2009 | $5,000.00 |
| 11/4/2009 | $5,000.00 |
| 12/28/2009 | $5,000.00 |
| **Total Transferred in 2009:** | **$25,000.00** |

| | |
|---|---|
| 3/11/2010 | $5,000.00 |
| 4/29/2010 | $6,000.00 |
| 7/9/2010 | $6,000.00 |
| 11/24/2010 | $2,000.00 |
| **Total Transferred in 2010:** | **$19,000.00** |
| **Total Transferred From 2007-2010:** | **$357,695.22** |

The Court avoided the transfers in the amount of $238,695 (the "Money Transfers") as actual and constructive fraudulent transfers [Order, at 31]. In reaching the figure of $238,695 (as opposed to the $357,695.22 in transfers that Trustee sought to avoid), the Court reasoned that Debtor and Mrs. Behrends' joint household expenses totaled $39,000.00 per year and that Debtor received reasonably equivalent value for the Transfers up to $39,000.00 per year [Order, at 13-14, 17]. Thus, the transfers were fraudulent as to creditors to the extent they exceeded $39,000.00 per year, i.e., $210,300 in 2007 ($249,300 minus $39,000) and $28,395 in 2008 ($67,395.17 minus $39,000) [Order, at 14]. The Court held that Debtor received reasonably equivalent value for all transfers in 2009 and 2010 because such transfers were less than the amount of Debtor and Mrs. Behrends' living expenses (i.e., $39,000 per year) [Order, at 14].

In the Motion, Mrs. Behrends argues that the Court should reduce the avoidable amount of the Money Transfers to $201,695.00 to account for Debtor and Mrs. Behrends' joint household expenses for 2009 and 2010 despite the fact that Debtor and Mrs. Behrends' household expenses exceeded the amount of the transfers in those years [Motion, at 5-6]. This argument fails for two reasons. First, Debtor cannot insulate his fraudulent intent by prepaying for household expenses to the detriment of current creditors. Second, the Court may properly find actual fraudulent intent regardless of whether Debtor received reasonably equivalent value. Accordingly, the Court correctly concluded that the Transfers were fraudulent as to creditors and the Order and Judgment should stand.

        1.     <u>Mrs. Behrends' Payment of Future Living Expenses is Not Value</u>

Mrs. Behrends argues that the Court should reduce the amount of the Money Transfers from $238,695 to $201,695 to account for Mrs. Behrends' supposed payment of $156,000 in joint household expenses from 2007 to 2010 [Motion, at 5-6]. Mrs. Behrends further argues that "it is reasonable to assume" that Mrs. Behrends paid $39,000 per year in household expenses and that Debtor received reasonably equivalent value in exchange for her payment of the same. In support, Mrs. Behrends cites testimony that (i) Debtor was Mrs. Behrends' only source of income, (ii) Mrs. Behrends paid household expenses from her account, and (iii) Mrs. Behrends saved money in her account to pay future expenses [Motion, at 5].

As an initial matter, the Court considered and rejected this argument in the Order. Specifically, the Court found that Mrs. Behrends "may have saved some or all of the excess funds she received in [2007 and 2008], but there was no evidence that she actually spent those funds on household expenses in some later year" [Order, at 14]. Thus, the evidence does not support Mrs. Behrends contention that she "used money from previous transfers" to pay household expenses in 2009 and 2010.

4

More importantly, Mrs. Behrends' argument is contrary to Colorado law. Under CUFTA, "[v]alue is given for a transfer . . . if, in exchange for the transfer . . . property is transferred or an antecedent debt is secured or satisfied, *but value does not include an unperformed promise made . . . to furnish support to the debtor or another person.*" Colo. Rev. Stat. § 38-8-104(1) (emphasis added). Mrs. Behrends' supposed payment of *future* living expenses on account of *prior* transfers constitutes nothing more than "an unperformed promise . . . to furnish support to" Debtor at some future time. Under CUFTA, therefore, Mrs. Behrends' argument that she gave value to Debtor in the form of payment of joint living expenses fails.

Moreover, Debtor may not accelerate unmatured, future obligations by prepaying living expenses to the detriment of Debtor's current creditors. *See generally Silagy v. Morris*, No. 5:13-CV-2645, 2015 WL 853499, at \*15 (N.D. Ohio Feb. 26, 2015) (finding actual fraudulent intent where debtor traded immediately available assets for future obligations that were not yet due); *Hasse v. Rainsdon (In re Pringle)*, 495 B.R. 447 (9th Cir. B.A.P. 2013) (rejecting argument that defendant gave reasonably equivalent value in exchange for transfer of debtor's residence where defendant promised to care for the debtor and allow him to live in the residence).

2.  Actual Fraudulent Intent Exists Regardless of Whether Debtor Received Reasonably Equivalent Value

Mrs. Behrends' argument that the Money Transfers should be reduced to account for the reasonably equivalent value Debtor received in exchange for the transfers, i.e., her payment of household expenses, fails for an additional reason. Because the Court found that Debtor made the Money Transfers with actual intent to hinder, delay, and defraud his creditors [Order, at 16], the Money Transfers are avoidable regardless of the value, or lack thereof, that Debtor received in exchange.

Under Colo. Rev. Stat. § 38-8-105(1)(a), a debtor's transfer of property is fraudulent if made with actual intent to hinder, delay, or defraud any creditor of the debtor. Whether a debtor acted with the requisite intent requires an analysis of "several factors -- also known as the 'badges of fraud' -- from which an inference of fraudulent intent may be drawn." *Krol v. Unglaub (In re Unglaub)*, 332 B.R. 303, 315 (Bankr. N.D. Ill. 2005). One such factor is whether the debtor received reasonably equivalent value in exchange for the transfers. Colo. Rev. Stat. § 38-8-105(2)(h).

The analysis of whether a transfer is an actual fraudulent conveyance is not mathematical; indeed, "no particular badge [of fraud] is necessary, nor is any combination sufficient." 5 COLLIER ON BANKRUPTCY ¶ 548.04[1][b][ii] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed.). Thus, the Court may find that Debtor acted with actual fraudulent intent regardless of whether he received reasonably equivalent value in exchange for the transfers. *See generally, e.g.*, *In re Indep. Clearing House Co.*, 77 B.R. 843, 859 (D. Utah 1987) ("A transfer made for reasonably equivalent value can still be fraudulent and hence avoidable if it was made 'with actual intent to hinder, delay, or defraud' persons to whom the debtor was or later became indebted"); *Silagy v. Morris*, No. 5:13-CV-2645, 2015 WL 853499, at \*15 (N.D. Ohio Feb. 26, 2015) ("'fair consideration' is not the issue in an actual fraudulent transfer claim"); *Plotkin v.*

5

*Pomona Valley Imports, Inc. (In re Cohen)*, 199 B.R. 709, 717 (B.A.P. 9th Cir. 1996) ("Unlike constructively fraudulent transfers, the adequacy or equivalence of consideration provided for the actually fraudulent transfer is not material to the question whether the transfer is actually fraudulent."); *In re Bennett*, No. 12-6136-TMR, 2014 WL 293462, at *6 (Bankr. D. Or. Jan. 27, 2014) (construing "*Plotkin* to simply mean that once actual fraudulent intent is found, either by direct or circumstantial evidence, the amount of consideration received becomes irrelevant to that issue"); *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) ("[W]here actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." (quoting *United States v. McCombs*, 30 D.3d 310, 328 (2nd Cir. 1994))). *See also* 5 COLLIER ON BANKRUPTCY ¶ 548.04[1][b][iii] (Alan N. Resnick & Henry J. Sommer, eds. 16th ed.) ("When a transfer is made with the requisite actual intent . . . the debtor's receipt of reasonably equivalent value is immaterial.").[1]

In the Order, the Court found that Debtor received reasonably equivalent value in exchange for the Money Transfers up to the amount of Debtor and Mrs. Behrends' joint living expenses, i.e., $39,000 per year [Order, at 13-14]. Regardless of this finding, the Court's findings support its conclusion that Debtor acted with intent to hinder, delay, and defraud his creditors. In particular, the Court found that:

    a.     Mrs. Behrends, as Debtor's wife, is an insider of Debtor (Colo. Rev. Stat. § 38-8-105(2)(a)) [Order, at 12];
    b.     Debtor concealed the Money Transfers by writing checks on accounts in the name of his entities and by causing entities to make payments to Mrs. Behrends in lieu of Debtor (Colo. Rev. Stat. § 38-8-105(2)(c)) [Order, at 12];
    c.     at the time of each of the Money Transfers, Debtor had been sued or threatened with suit by his ex-wife, various securities broker customers, and taxing authorities (Colo. Rev. Stat. § 38-8-105(2)(d)) [Order, at 12-13];
    d.     Debtor did not receive reasonably equivalent value in exchange for $238,965 of the Money Transfers (Colo. Rev. Stat. § 38-8-105(2)(h)) [Order, at 13-14]; and
    e.     Debtor was insolvent at the time of each of the Money Transfers as a result of Debtor's tax debt (Colo. Rev. Stat. § 38-8-105(2)(i)) [Order, at 14-16].

Thus, the evidence shows the presence of at least 5 badges of fraud. The Court was therefore correct in avoiding the Money Transfers regardless of the supposed value received by Debtor in exchange.

In sum, the evidence does not support Mrs. Behrends' argument that "the total amount of living expenses for 2007-2010 ($156,000) should be subtracted from the transfers" [Motion, at 6]. In addition to the fact that this argument was addressed and rejected by the Court [Order, at 14], the Order is in accordance with applicable law. As a result, the Court should deny the Motion.

---

[1] Because the Court may properly find that all $357,695.22 transferred to Debtor is avoidable regardless of whether Debtor received reasonably equivalent value in exchange, Trustee reserves the right to challenge the reduction of the Money Transfers from $357,695.22 to $238,695 on appeal.

**B.     Resulting Trust**

Mrs. Behrends argues that the Court improperly imposed a resulting trust on the Residence, 21st Street Property, and Vehicles because "[t]he evidence here doesn't meet [the] heightened standard" of proof required to overcome the presumption that these assets were gifted to Mrs. Behrends [Motion, at 6]. More specifically, Mrs. Behrends claims that "the Court's analysis doesn't look at the evidence vis-à-vis each asset with sufficient detail" [Motion, at 6] and that Trustee failed to prove "that Debtor in fact paid for the [21st Street Property] . . . let alone had intention to retain a beneficial interest" [Motion, at 7]. This argument fails because the record is replete with evidence that Debtor's "sole intent was to structure his assets and income in such a way that he could retain a beneficial interest but shield them from his existing and future creditors" [Order, at 20].

Resulting trusts are "'intent-enforcing' trusts, where 'the settlor has expressed no intent by words, but in which he has done acts other than talking or writing from which the court finds an intent that a trust arise.'" *Shepler v. Whalen*, 119 P.3d 1084, 1089 (Colo. 2005) (*quoting* George Gleason Bogert & George Taylor Bogert, Trusts & Trustees § 451, at 225 (2d ed. rev. 1991)). Courts will impose resulting trusts where, *inter alia*, "property is purchased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person." *Shepler*, 119 P.3d at 1089. An exception arises when the purchaser directs property to be conveyed to his or her spouse. *Valley State Bank v. Dean*, 97 Colo. 151, 154-55 (Colo. 1935). In that situation, the law presumes that the transfer was intended as a gift. *Id.* The presumption can be overcome, however, where there is "strong and convincing" evidence that a gift was not intended. *Id.* at 155. *See generally McGavin v. Segal (In re McGavin)*, 189 F.3d 1215 (10th Cir. 1999) (applying Utah law and affirming imposition of a resulting trust where "Debtor's use and control of the [property] went far beyond residing in the home and paying taxes, insurance, and other household bills" and where debtor used the property as collateral for loans used for personal and business purposes).

After analyzing the relevant law and the evidence produced at trial, the Court was left "with the firm conviction that the Debtor had no intent to gift these homes and vehicles to his wife" [Order, at 20]. Instead, Debtor's "sole intent" was to "retain a beneficial interest" in these assets while shielding them from his creditors. *Id.* The evidence supports the Court's conclusion. The evidence shows, among other things, that

a.     Mrs. Behrends has had no source of income other than Debtor since 1994 or 1995 [May 5 Tr. 164:5-8, 18; Order, at 2];
b.     Debtor was the source of the funds used to purchase the Vehicles [Order, at 7, 20];
c.     Debtor paid expenses related to the Vehicles [Order, at 7];
d.     Debtor recognized depreciation for the Corvette in his 2007 tax return [Trustee Ex. 71; Order, at 7];
e.     Debtor recognized depreciation for the Jaguar in his 2004, 2005, and 2006 tax returns [Trustee Exs. 68, 69 and 70; Order, at 7];

7

  f. Debtor uses the Escalade as his personal vehicle [Pretrial Statement at 8, ¶ 21(e); May 5 Tr. at 135:5-10; Order, at 7] and recognized depreciation for the Escalade in his 2007, 2007, 2009 and 2010 tax returns [Trustee Exs. 71, 72, 73 and 74; Order, at 7];

  g. Debtor was the "only possible source" of the funds used for the down payment and mortgage payments on the Residence [Order, at 7, 20-21]; and

  h. Debtor paid the down payment for the purchase of the 21st Street Property [Order, at 6, 21].

  Moreover, Debtor admitted, on multiple occasions, that he titled assets in the name of Mrs. Behrends for the sole purpose of shielding assets from his creditors, as demonstrated by the following:

  a. Debtor's long-time friend and business associate, John Guyette, testified that in 2010 when he and Debtor "started talking about going into business together," Debtor advised Guyette to transfer his house to his wife since "the securities business . . . has got [sic] a lot of adversarial complaints filed against brokers" [May 5 Tr. 37:24-38:8; Order, at 20];

  b. Stow Witwer testified that Mrs. Behrends was a member of Conifer Ridge "because Larry Behrends did not want to be a named member because it would expose his interest to claims of creditors including his former wife" [May 6 Tr. 11:14–18; Order, at 20].

  c. In a prior proceeding related to his divorce from his ex-wife, Debtor informed the court that he could not be an owner of the project until he "paid off a twenty-five thousand and some dollar judgment" that he "didn't tell them about" [Def. Ex. EE at 16:18-25; Order, at 20]; and

  d. In March 2009, Debtor wrote a letter to Brian Ruden of Omni Financial admitting that his "strategy" in titling assets purchased with his funds in the name of Mrs. Behrends "was to protect a few basic assets from risk of legal action . . . " [Trustee Ex. 90; Order, at 20].

  Mrs. Behrends' argument that "the evidence does not meet the heightened standard" applicable to resulting trusts ignores the record [Motion, at 8]. Indeed, the record is replete with evidence that Debtor did not intend to gift the Residence, 21st Street Property, and Vehicles to Mrs. Behrends. Instead, the evidence "clearly and compellingly" shows that "Debtor intended to acquire and retain a beneficial interest in the homes and cars and his only purpose in allowing his wife to take sole title was to defraud his creditors" [Order, at 20]. The Motion should therefore be denied.

**C.** **Constructive Trust**

  Mrs. Behrends next argues that Trustee "did not meet her burden to trace each payment or transfer that formed the basis for the Court's imposition of a constructive trust as to each of the assets" [Motion, at 8]. This argument also ignores the evidence and should be rejected by the Court.

  Unlike resulting trusts, constructive trusts are "fraud-rectifying trusts" that are imposed in cases of fraudulent transfers, breach of contractual or fiduciary obligation, fraud, or other wrongdoing. *Shepler v. Whalen*, 119 P.3d 1084, 1089 (Colo. 2005) (en banc). Imposition of a

constructive trust requires proof of "fraud or mistake in the [legal owner's] acquisition of the property" and the ability "to trace the wrongfully held property." *Hill v. Kinzler*, 275 F.3d 924, 926-27 (10th Cir. 2001) ((citing *In re Marriage of Allen*, 724 P.2d 651, 657 (Colo. 1986) (en banc) and *In re Seneca Oil*, 906 F.2d 1445, 1449 (10th Cir. 1990)).

The evidence shows that (i) Debtor wrongfully titled the Residence, 21st Street Property, and Vehicles in the name of Mrs. Behrends in order to shield his assets from his creditors and (ii) that at the time these assets were purchased, Debtor was Mrs. Behrends' sole source of income. As a result, the Court properly imposed a constructive trust on the Residence, Vehicles, and 21st Street Property.

The Court found that "Debtor's fraudulent intent in hiding his assets from his creditors suffices to establish the element of wrongdoing" [Order, at 23]. Indeed, Debtor admitted, on numerous occasions, that *he* titled *his* assets in the name of his wife in order to shield them from his creditors [May 5 Tr. 37:24-38:8, May 6 Tr. 11:14–18, Def. Ex. EE at 16:18-25, Trustee Ex. 90; Order, at 20].

In the Order, the Court found that "Trustee has adequately demonstrated the ability to trace [Debtor's] funds to the Residence, the vehicles, and to at least a one-half interest in the 21st Street Property" [Order, at 23]. As explained in the Resulting Trust section above, the evidence shows that Mrs. Behrends has had no source of income other than Debtor since 1994 or 1995 [May 5 Tr. 164:5-8, 18; Order, at 2]. It follows, therefore, that Debtor was the sole source of funds used for the purchase of the Residence in 2004 and the Vehicles in 2007.

The 21st Street Property, purchased in 1989, was likewise purchased with Debtor's funds. The 21st Street Property was purchased with a $25,000 down payment and the assumption of the existing mortgage [Trustee Exs. 79, 80; Order at 6]. The funds used for the down payment towards the 21st Street Property came from a loan to Mrs. Behrends from Debtor's father (the "Ivan Behrends Loan") [Trustee Ex. 80 at 6, 11; Order at 6]. In 1990, Debtor assumed the Ivan Behrends Loan, and shortly thereafter, Debtor secured the Ivan Behrends Loan by granting his father a mortgage on his prior residence [Trustee Ex. 10; Order, at 6]. The Ivan Behrends Loan was paid in full from Debtor's portion of the proceeds from the sale of Debtor's prior residence [Trustee Ex. 11; Order at 6]. Thus, the evidence shows that "in actuality, it was the Debtor, not [Mrs. Behrends], who paid the down payment on the 21st Street Property" [Order, at 6].

Based on the evidence, therefore, Mrs. Behrends' argument that Trustee "did not meet her burden to trace each payment or transfer" fails [Motion, at 8].

### D.  **Double Recovery**

Last, Mrs. Behrends argues that the judgment on account of the Money Transfers and the imposition of an implied trust on the Residence, the 21st Street Property, and the Vehicles results in a double recovery by Trustee. This argument is simply incorrect. While these assets were purchased with Debtor's funds, they were not purchased with funds Trustee sought to avoid as fraudulent transfers to Mrs. Behrends.

9

The first fraudulent transfer Trustee sought to avoid occurred on April 18, 2007. The Residence, 21st Street Property, Jaguar, and Corvette were purchased prior to that date. Specifically,

a. the 21st Street Property was purchased on July 26, 1989 (Trustee Ex. 9);
b. the Residence was purchased on June 11, 2004 (Trustee Ex. 1);
c. the Corvette was purchased on April 17, 2007 (Trustee Ex. 7); and
d. the Jaguar was purchased on April 10, 2007 (Trustee Ex. 6).

As to the 2008 Escalade, the evidence shows that it was purchased on September 6, 2007 [Trustee Ex. 8]. The evidence further shows that the 2008 Escalade was purchased by trading in a 2005 Escalade and paying approximately $12,000 cash [May 5 Tr. 135:19-136:19]. Mrs. Behrends testified that the 2008 Escalade was purchased from Ghent Chevrolet [May 5 Tr. 137:6-11]. On or around September 15, 2007, Debtor wrote a check to Ghent Chevrolet for $12,762.67 from an account in the name of his alter ego entity, 21st Century [Trustee Ex. 41, at 43]. To the extent Debtor transferred funds to Mrs. Behrends to enable her to purchase the 2005 Escalade, Trustee did not seek to avoid such transfers. Moreover, the funds used to pay the difference between the trade-in value of the 2005 Escalade and the total purchase price for the 2008 Escalade came from 21st Century's bank account, not Mrs. Behrends' bank account. In other words, the $12,762.67 payment to Ghent Chevrolet is not included in the Money Transfers. The imposition of an implied trust on the 2008 Escalade does not, therefore, result in a double recovery.

In sum, to the extent Debtor's funds were used to purchase these assets, Trustee did not seek to avoid the transfer of such funds in this proceeding. As a result, the imposition of an implied trust on the 21st Street Property, the Residence, and the Vehicles does not overlap with the money judgment on account of the Money Transfers. Accordingly, the Motion must be denied on this basis.

## IV.    CONCLUSION

In sum, the Motion should be denied. Mrs. Behrends has failed to show that this is the type of "rare circumstance" warranting modification of the Order and Judgment. *See Grynberg v. Ivanhoe Energy, Inc.*, No. 08-CV-2528, 2010 WL 2802649, at *1 (D. Colo. July 15, 2010), *aff'd,* 490 F. App'x 86 (10th Cir. 2012). Indeed, Mrs. Behrends does not argue that "the court has misapprehended the facts, a party's position, or the controlling law." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Instead, Mrs. Behrends raises issues that were considered, and rejected, by the Court in the Order. *See Brumfiel v. U.S. Bank*, No. 12-CV-02716-WJM-MEH, 2014 WL 4056559, at *1 (D. Colo. Aug. 14, 2014) (Rule 59(e) motions are "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing").

WHEREFORE, Trustee requests that this Court enter an Order denying the Motion, declining to alter or amend the Judgment, and for such other relief as the Court deems proper.

Dated: May 9, 2017.                               Respectfully submitted,

**ONSAGER | FLETCHER | JOHNSON, LLC**

s/ Gabrielle G. Palmer
J. Brian Fletcher, #28629
Gabrielle G. Palmer, #48948
1801 Broadway, Ste. 900
Denver, Colorado 80202
Ph: (303) 512-1123
Fax: (303) 512-1129
jbfletcher@OFJlaw.com
gpalmer@OFJlaw.com

Counsel for Trustee

## CERTIFICATE OF SERVICE

    I certify that on May 9, 2017, I served a copy of the forgoing RESPONSE TO DEFENDANT VICKI L. OLETSKI-BEHRENDS' MOTION TO RECONSIDER ORDER ON COMPLAINT by placing it in the United States mail, postage prepaid, addressed to the following:

Michael J. Davis
4100 E. Mississippi Ave., Ste. 420
Denver, CO 80246

                                                                            s/*Tiffany J. Cadwell*