## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF COLORADO

| | |
|---|---|
| In re: | |
| | Case No. 16-21943-MER |
| CREEKSIDE CANCER CARE, LLC, EIN: 27-0468155, | |
| | Chapter 11 |
| Debtor. | |

## DEBTOR'S OPENING BRIEF REGARDING NATURE
## OF TRANSACTION WITH TOMOTHERAPY, INC.

Pursuant to the Court's Notice dated as of March 30, 2017 (Docket No. 139), Creekside Cancer Care, LLC (the "**Debtor**"), the debtor and debtor in possession in the above-captioned case, hereby submits this brief regarding the nature of the transaction between the Debtor and TomoTherapy, Inc. (together with its parent corporation, Accuray, Inc., "**Accuray**") and states as follows:

## I.    INTRODUCTION[1]

1.    In both form and substance, the Sale Agreement is a contract for the sale of the Tomo, with seller-financing provided by Accuray.  The cover page of the Sale Agreement states that it "relat[es] to the sale and ownership" of the Tomo.  The contract bears all the indicia of an installment sale contract and security agreement, including a "purchase price," a "down payment," an amortization schedule, an interest rate, a grant of a security interest to Accuray, and a provision putting the risk of loss on the Debtor.  The transaction fits squarely within the Uniform Commercial Code definition of a "security interest."   The transaction is not even a "disguised" financing, as the parties made no attempt to style the agreement as a lease or incorporate terms typically found in leases.  Accuray filed a proof of claim as a secured creditor.

---

[1] Capitalized terms used but not defined in this Introduction shall have the meanings ascribed to them below.

## II.   BACKGROUND

### A.   Factual Background

2.      On September 30, 2011, the Debtor and Accuray entered into that certain *Accuray TomoHD System Shared Ownership Agreement* (as amended, the "**Sale Agreement**"), a copy of which is attached hereto as **Exhibit A**.[2]  The Sale Agreement is a contract "relating to the sale and ownership" of a TomoTherapyHD Treatment System (the "**Tomo**") and modular shielding to accommodate the Tomo.  *See* Sale Agreement §§ A & B.1.  The Tomo is a CT imaging and radiation treatment delivery system.  The machine, which weighs over 8,000 pounds, is housed in a vault at the Debtor's cancer treatment facility.

3.      Under the initial version of the Sale Agreement, the net "Purchase Price" for the Tomo and related products was $3,395,200.  *See* Sale Agreement Attachments A & B.  On December 22, 2011, the parties entered into that certain *Amendment Two to Accuray TomoHD System Shared Ownership Agreement* (the "**Amendment Two**"), a copy of which is attached hereto as **Exhibit B**, which increased the net "Purchase Price" to $3,475,293 and established an amended amortization schedule.

4.      The Sale Agreement calls for the Debtor to pay for the Tomo through a combination of three types of payments:

- **Down Payment**: the Debtor paid Accuray a down payment of $80,000.  *See* Sale Agreement § 13.1.1 & Attachment A.

- **Minimum Monthly Payment**: the contract requires a minimum monthly payment of $60,000.  *See id.* § 13.1.2 & Attachment A.

---

[2] An executed copy of the Sale Agreement is attached to Accuray's Proof of Claim (Claim No. 22).  Certain portions of the executed version are barely legible.  For convenience, the copy of the Sale Agreement attached hereto as **Exhibit A** is a legible, *unsigned* copy of the Sale Agreement.  To the best of the Debtor's knowledge, the unsigned copy is identical to the executed copy except for certain handwritten marks on the attachments to the executed copy.  The Debtor acknowledges that in the event of any inconsistency between Exhibit A and the executed document, the executed Sale Agreement shall control.

- **Revenue Share Payments**:  the Debtor was required to pay Accuray 50% of the total Technical Fees (as defined in the Sale Agreement) received from the Debtor's patients; provided, however, that if the Revenue Share Payment due to Accuray in any given month is less than the Minimum Monthly Payment, then only the Minimum Monthly Payment is due to Accuray.  *See id.* § 13.1.3.

5.      The term of the Sale Agreement is five years, subject to earlier termination as set forth in Section 30.1.  Accuray reserved title pending payment in one of two ways.  First, the Debtor could pay the "Buyout Price" at any time, on sixty days' notice.  *See id.* § 14.  The method for calculating the Buyout Price is set forth in Section 14.2; in short, it is calculated by reducing the initial purchase price by the amount of principal payments made by the Debtor.  For illustrative purposes, if the Debtor made only the Minimum Monthly Payment each month, the Buyout Price at the end of the 60-month term would be $934,877.88.  *See* Amendment Two.  Alternatively, title transfers at such time as the Debtor's Aggregate Monthly Payments (defined as the aggregate Minimum Monthly Payments plus Revenue Share Payments) to Accuray equaled the full amount of the purchase price (plus interest).  *See* Sale Agreement § 31.1.

6.      The Debtor granted Accuray a security interest in the Tomo and proceeds thereof to secure the Debtor's payment obligations.  *Id.* § 31.  Accuray filed a UCC Financing Statement with the Colorado Secretary of State on January 11, 2012.  Other pertinent terms of the Sale Agreement are discussed in Part III, *infra*.

**B.      Procedural Background**

7.      The issue of whether Accuray is a secured creditor or a lessor arose in the context of Accuray's *Motion for Relief from Automatic Stay or, Alternatively, for Adequate Protection* (Docket No. 115) (the "**Stay Relief Motion**").  Accuray asserted that it was a lessor, but sought relief fundamentally inconsistent with that assertion.  *See* Stay Relief Motion at ¶ 8 (stating that Accuray "agreed to lease [the Tomo] to Creekside"); 11 U.S.C. § 363(e) (providing that a lessor of personal property may not obtain relief from stay).  The Court denied the Stay Relief Motion

without prejudice, concluding that it must first determine the nature of Accuray's interest in the Tomo. It is anticipated that Accuray will renew the Stay Relief Motion once the instant issue is decided.

8.      Determination of the nature of Accuray's interest is critical to the Debtor's reorganization. In its chapter 11 plan, the Debtor intends to treat Accuray as a secured creditor, with the amount of its secured claim equal to the value of the Tomo. *See* 11 U.S.C. § 506(a). The Debtor is currently conducting discovery regarding the value of the Tomo.

### III.    ARGUMENT

**A.      Accuray Sold the Tomo to the Debtor and Retained a Security Interest**

9.      Under the plain language of the California Uniform Commercial Code (the "**CUCC**")[3] and well-settled case law, the Debtor became the owner of the Tomo upon delivery, notwithstanding language in the Sale Agreement reserving title in Accuray's name. Accuray is a secured creditor.

10.     Accuray's interest fits squarely within the definition of "security interest" set forth in Section 1201(b)(35) of the CUCC. Section 1201(b)(35) provides in pertinent part that "[t]he retention or reservation of title by a seller of goods notwithstanding shipment or delivery to the buyer under Section 2401 is limited in effect to a reservation of a 'security interest.'" Section 2401, in turn, provides in pertinent part that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." Thus, so long as the Sale Agreement effectuates (i) a "sale" (ii) of "goods," then Accuray's interest is limited to a security interest under Sections 1201(b)(35) and 2401 of the CUCC. Both of these elements are easily satisfied.

---

[3] The Sale Agreement provides that it is governed by California law. *See* Sale Agreement § 28.6. California has adopted the Uniform Commercial Code for all purposes relevant to the instant issue. *See* CAL. COM. CODE §§ 1101 *et seq.*

11.     The Tomo is a "good" within the meaning of the CUCC.  "Goods" are defined in pertinent part as "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale."  CUCC § 2105(1).  The Tomo was identified in the Sale Agreement and was moved to the Debtor's facility for installation.

12.     Further, the Sale Agreement is a contract for the "sale" of the Tomo.  Under the CUCC, "[a] 'sale' consists in the passing of title from the seller to the buyer for a price (Section 2401)."  CUCC § 2106(1).  The provisions cited above provide for passing of title.  Additional terms demonstrating that the Sale Agreement is a sale contract are summarized below:

- The first paragraph of the Sale Agreement states: "This Agreement . . . forms a contract between the [Debtor] and [Accuray] *relating to the sale* and ownership of the products specified herein."  Sale Agreement at p.1 (emphasis added).

- Attachment A ("Quotation") identifies the specific products to be sold and refers to the "Total Price" for such products.  *Id.* at Attachment A, p. 9.

- Attachment B ("Amortization Schedule") identifies the "Purchase Price" of the Tomo.  *Id.* at Attachment B.

- The Sale Agreement required the Debtor to make a "Down Payment."  *Id.* § 13.1.1 & Attachment A.

- The Down Payment is non-refundable.  *Id.* § 30.2.

- The risk of loss passed to the Debtor upon delivery.  *Id.* § 16.

- Once the Debtor's total Aggregate Monthly Payments paid to Accuray equal the "Remaining System Price," the Sale Agreement automatically terminates and title passes to the Debtor.  *Id.* § 30.1.

- Even if the Debtor were to make only the Minimum Monthly Payments, it would have the option to buy the Tomo after five years for a "Buyout Balance" of $934,877.88 – less than 20% of the "List Price" of the Tomo plus the bunker.  *See* Amendment Two, dated as of December 22, 2011.

13.     In addition, the Sale Agreement is explicit that Accuray's role in the sale transaction is that of seller-financer:

- The Sale Agreement requires the Debtor to pay interest at the rate of 8.5%. *See* Attachment A, at p. 9 & Attachment B.

- Attachment B to the Sale Agreement is an "Amortization Schedule" breaking out how each monthly payment will be allocated to interest and principal.

- Similarly, the Buyout Price is calculated by reducing the initial Buyout Price by prior payments "which are attributable to principal." *Id.* § 14.2.

- The Debtor granted Accuray a security interest in the Tomo in order to secure payments due under the Sale Agreement. *Id.* § 31.

- On January 11, 2012, Accuray filed a UCC Financing Statement with the Colorado Secretary of State.

14.     The aforementioned features of the Sale Agreement evidence that it is, in effect, an installment sale contract (sometimes also referred to as a "conditional sale contract"). Accordingly, under the CUCC, the Debtor owns the Tomo, subject to Accuray's security interest.  This result comports with "the universal rule that legal results should be based on substance not form, and the specific rule applicable to secured transactions that a transaction intended to create a security interest in property is treated as such regardless of its form." *In re Global Envtl. Servs. Grp., LLC*, 2006 Bankr. LEXIS 4926, at *6 (Bankr. D. Haw. Mar. 16, 2006); *see also* CUCC § 9109(a)(1) (providing that Article 9 applies to "[a] transaction, ***regardless of its form***, that creates a security interest in personal property or fixtures by contract" (emphasis added)).

15.     Case law is consistent in holding that once possession passes to the buyer under an installment sale contract, the contract ceases to be executory and the seller is a secured creditor:

> [A] 'conditional sale contract' covering personal property is not an 'executory contract' once the seller gives physical possession of the goods to the buyer, whether or not the seller attempts to retain title to the goods. . . . Instead, the seller is treated as a secured creditor, and the seller's rights depend on whether the seller perfected the security interest.

*In re Global Envtl. Servs. Grp., LLC*, 2006 Bankr. LEXIS 4926, at *6-7; *see also In re Pac. Express, Inc.*, 780 F.2d 1482, 1487 (9th Cir. 1986) (holding that "a mere installment sale no longer involves an executory contract when the seller has already delivered the thing sold;" seller is a secured creditor under such circumstances); *In re Johnson*, 501 F.3d 1163, 1174 (10th Cir. 2007) (installment sale contract for sale of pickup truck was non-executory and seller had status of secured creditor).

**B.      The Sale Agreement is Not a Lease**

16.      Recently, Accuray has taken the position that the Sale Agreement is a lease, even though the words "lease" and "rent" do not appear anywhere in the contract.  Accuray's own conduct, however, belies this assertion.  Accuray filed a proof of claim asserting a secured claim in the amount of $1.6 million (exactly the amount Accuray had previously claimed the Tomo is worth).  *See* Proof of Claim No. 22.  The proof of claim accurately characterizes the nature of Accuray's interest: it holds a claim for payments owing under the Sale Agreement, which is secured to the extent of the value of the Tomo, pursuant to section 506(a) of the Bankruptcy Code (subject to the Debtor's counterclaims, setoff rights, and disputes regarding the validity of the claim).

17.      Furthermore, Accuray filed a motion for relief from stay—a remedy that is unavailable to a lessor of personal property.  *See* 11 U.S.C. § 363(e).  Accuray might argue that the Sale Agreement is a "true lease" under the framework set forth in CUCC Section 1203.  Section 1203 sets forth certain guidelines for distinguishing between true leases and disguised financing transactions.  Section 1203 has no application here, however, because it applies only to "a transaction ***in the form of a lease***."  CUCC § 1203(a)-(c) (emphasis added).  As noted, the Sale Agreement does not even use the word "lease," much less purport to be a lease.  Therefore, the Court need not reach the "true lease" analysis set forth in CUCC Section 1203.

7

**WHEREFORE**, the Debtor respectfully requests entry of an order declaring that the Sale Agreement is not an unexpired lease and that the nature of Accuray's interest in the Tomo is an Article 9 security interest, and granting such other and further relief as the Court deems just and proper.

Dated April 28, 2017.

Respectfully submitted,

BROWNSTEIN HYATT FARBER SCHRECK, LLP

s/   Samuel M. Kidder
Michael J. Pankow, #21212
Samuel M. Kidder, #49125
410 17th Street, Suite 2200
Denver, Colorado  80202
Telephone:  (303) 223-1100
Facsimile:  (303) 223-1111
mpankow@bhfs.com
skidder@bhfs.com

*Attorneys for Debtor*

8

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2017, the foregoing DEBTOR'S OPENING BRIEF REGARDING NATURE OF TRANSACTION WITH TOMOTHERAPY, INC. was electronically filed with the Court using the CM/ECF system, which sent notification to all parties of interest participating the CM/ECF system, and was served by placing same via first class mail postage prepaid properly addressed to the following:

Michael J. Davis, Esq.
4100 E. Mississippi Ave., Ste. 420
Denver, CO 80246

Alan K. Motes
Byron G. Rogers Federal Building
1961 Stout St.
Ste. 12-200
Denver, CO 80294


_____/s/ Sheila M. Grisham_____
Sheila M. Grisham, Paralegal

018535\0002\15640813.2