**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 16-14761-MER |
| Y&K SUN INC. ) | |
| ) | Chapter 11 |
| Debtors. ) | |
| ) | |

**WONJOONG KIM and YOONEE KIM'S BRIEF ON LIABILITY OF Y&K SUN, INC. UNDER THE COLORADO SECURITIES ACT, AND WHETHER ATTORNEYS' FEES ARE AWARDABLE UNDER THE COLORADO SECURITIES ACT**

WONJOONG KIM and YOONEE KIM (hereinafter collectively referred to as the "Kims"), through their undersigned counsel, respectfully files their Brief On Liability Of Y&K Sun, Inc. Under The Colorado Securities Act, And Whether Attorneys' Fees Are Awardable UnderThe Colorado Securities Act,and in support thereof, states as follows:

**Background**

1. On May 12, 2016, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code with this Court.

2. The Debtor is operating as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the Debtor's Chapter 11 case, and no committees have been appointed or designated.

3. The Kims and the Debtors appeared before this Court on January 23, 2017 for a Status on how to proceed on the Objection of the Debtor to the Amended Claim of the Kims

4. At that hearing, the Court ruled as follows:

The Kims will brief the issues of 1) the liability of Y&K Sun, Inc. under the Colorado Securities Act, and 2) whether attorneys' fees are awardable under the Colorado Securities Act, on or before February 6, 2017. The Debtor's response is due February 13, 2017, and the Kims' reply is due on February 13, 2017. Order Dkt' #174 (the "Order").

5. On February 10, 2017, the Court granted a second extension for the Kims to file their brief on February 27, 2017. Dkt. #180.

6. The Brief required by Court Order is as follows:

I. **IT IS CLEAR THAT Y&K SUN INC. HAS LIABILITY FOR VIOLATION OF THE COLORADO SECURITIES ACT §11-51-501 AND §11-51-604**

a. **The Applicable Provisions of the Colorado Securities Act.**

The Colorado Securities Act §11-51-501 states as follows:

> § 11-51-501. Fraud and other prohibited conduct (1) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly: (a) To employ any device, scheme, or artifice to defraud; (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The Colorado Securities Act § 11-51-201(12) defines a person as follows:

> "Person" means an individual, a corporation, a partnership, an association, an estate, a joint-stock company, a trust where the interests of the beneficiaries are evidenced by a security, an unincorporated organization, a government, a governmental subdivision or agency, or any other legal entity. Colorado Securities Act § 11-51-201 (12).

Part 6 of the Colorado Securities Act establishes liability, both criminal and civil, for violations of Section 11-51-501. *See People v. Prendergast*, 87 P.3d 175, 180 (Colo. App. 2003).

b. **Liability under Colorado Securities Act § 11-51-604(3)**

The Kims and Y&K Sun have executed a Joint Stipulation attached hereto as Exhibit A which admits liability on behalf of Y&K Sun for violations of the Colorado Securities Act § 11-51-604(3). The relevant provisions of the Joint Stipulation are as follows:

> "14.     The Bankruptcy Court found facts sufficient to conclude that the Suns "employed a scheme to defraud" within the meaning of Colorado Securities Act §11-51-501(1)(a), made untrue statements of material fact within the meaning of Colorado Securities Act §11-51-501(1)(b), or engaged in a course of business with the Kims that operated as a fraud and a deceit against the Kims within the meaning of Colorado Securities Act § 11-51-501(1)(c). The Bankruptcy Court's findings also support the conclusion that the Suns acted as agents for Y&K Sun, which is a "person" as defined in the Colorado Securities Act.

> 15.     The Colorado Securities Act § 11-51-604(3) provides as follows:
> "(3) Any person who recklessly, knowingly, or with an intent to defraud sells or buys a security in violation of section 11-51-501(1) … is liable to the person buying or selling such security or receiving such services in connection with the violation for such legal or equitable relief that the court deems appropriate, including rescission, actual damages, interest at the statutory rate, costs, and reasonable attorney fees."

16. Y&K Sun does not dispute that the Kims should have an allowed claim under § 11-51-604(3) equal to the amount of the Amended Judgment (Docket no. 156)." See Exhibit A, Joint Stipulation Regarding Admission of Liability Of Y&K Sun Inc. for Violation of the Colorado Securities Act §11-51-501 And §11-51-604(3).

For the reasons detailed and admitted by Y&K Sun in the Joint Stipulation, this Court should find that Y&K Sun has violated the Colorado Securities Act §11-51-501 And §11-51-604(3) and should be found liable therefor.

c. **Liability under Colorado Securities Act § 11-51-604(4)**

In its Order ("Order"), this Court made findings of fact in support of its conclusions that the Suns violated §§ 523(a)(2)(A), (a)(4), and (a)(6).[1] These findings of fact support the Kims claims for violations of the Colorado Securities Act, in particular §§ 11-51-501, and 11-51-604(4).

i. Findings of Fact and Conclusions of Law of the Bankruptcy Court Pertaining to Fraudulent Misrepresentations and Omissions to State Material Facts.

In its Order, the Court found the Debtors had clearly defrauded the Kims, making, *inter alia*, the following findings of fact and conclusions of law:

- "H. Sun convinced the Kims to invest their entire $900,000 by making the following representations:

  - The JCRS Property needed $1 million for renovations and improvements.

  - The JCRS Property was encumbered by a current loan of $3 million.

  - H. Sun had arranged a refinancing of $4 million for the JCRS Property, and that such financing was a "done deal." He showed the Kims a copy of a mortgage application for the JCRS Property in support of the assertion.

  - The JCRS Property would be worth approximately $6 million when the renovations were completed and the expected lessees had moved in.

  - After the refinancing paid off the existing $3 million loan, the Suns and the Kims would split the remaining $1 million in refinancing proceeds fiftyfifty. This would provide an almost immediate return of $500,000 of the Kims' investment to enable the Kims to purchase a house, while the improved JCRS Property would provide the Kims $3,000 per month in income beginning three months after the investment.

  - H. Sun would guarantee the value of the investment.

None of the above representations was true." Order at pp. 2-3 of 26.

---

[1] *See* Order of the Bankruptcy Court, dated September 12, 2014.

- "The evidence clearly shows each of the Suns made both omissions and implied misrepresentations to the Kims." *Id*. at p. 12 of 26.

- "Particularly striking is the Suns' 'moving target' ploy with the Kims." *Id*. at p. 13 of 26.

- "the testimony of the Kims demonstrates they were wrongfully induced to participate in the transactions with the Suns." *Id*. at p. 14 of 26.

- "In this case, Y. Sun convinced Y. Kim to give her a $900,000 check, which Y. Kim reasonably believed was to be deposited in the account of YKSI and used for the purposes of renovating and marketing the JCRS Property. Instead, Y. Sun deposited the check into a recently-opened personal account… [T]he funds were not used for their represented purpose, with fraudulent intent." *Id*. at p.16 of 26.

- "Thereafter, H. Sun convinced the Kims to return the YKSI shares in exchange for the interest in the S & B Nova Note, but failed to inform them the note was subordinate to the Hanmi Bank note. … [T]he failure to inform them of a $1.7 million senior lien on the note's collateral significantly misrepresented the risk of the investment." *Id*. at p. 8 of 26.

- "It is clear the Kims suffered substantial economic damage in the form of the loss of the majority of their savings." *Id*. at p. 17 of 26.

- "The Court finds the evidence as set forth above also indicates the presence of actual fraud by the Suns. The above facts establish the Suns' ongoing pattern of fraud as part of a scheme to obtain the $900,000 from the Kims on the pretense of investing in the JCRS Property, and then to use those funds for their own purposes. After obtaining the initial $900,000 investment, the Suns continued to mislead the Kims over a period of several years. During that time, the Suns abused their friendship and community reputation in favor of perpetrating a scheme to prey on the Kims' inexperience and manipulate the Kims' investment for their own benefit… [T]hey sold stock to the Kims, and later recaptured the stock by threatening bankruptcy. The Suns then persuaded the Kims to accept an interest in a promissory note which was subordinate to a concealed senior lienor." *Id*. at p. 14 of 26.

- "H. Sun did not inform the Kims the S & B Nova Note was in a subordinate position to Hanmi Bank's note. H. Sun also failed to inform the Kims the S & B Nova Note was worth $163,000 less than the face amount of the note, due to payments previously made by S & B Nova." *Id*. at pp. 4-5 of 26.

The Court further found that during the trial "on several occasions when the Suns' testimony conflicted with that of the Kims, the Kims' testimony was more credible, while the Suns' testimony was rambling, evasive and inconsistent." *Id*, at p. 12 of 26, n.46.

> ii. <u>Securities Fraud Violation of Colorado Securities Act §§ 11-51-501 and 11-51-604(4) by the Suns and Y&K Sun in Connection with the Sale to Kims of Shares of Y&K Sun and Exchange of Y&K Sun Shares for S&B Nova Note.</u>

As set forth above, the Suns have stipulated that Y&K Sun violated § 11-51-604(3). The Kims also claim that the Suns and Y&K Sun violated the Colorado Securities Act §§ 11-51-501 and 11-51-604(4), as it relates to Y&K Sun's conduct underlying the sale of Y&K Sun shares and Y&K Sun's conduct underlying the exchange of shares of Y&K Sun for the S&B Nova Note.

Section 11-51-501(1)(b) provides that "[i]t is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly: "(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading."

Section 11-51-604(4) provides for the imposition of civil liability against:

> ***Any person who sells a security in violation of section 11-51-501(1)(b) (the buyer not knowing of the untruth or omission)*** and who does not sustain the burden of proof that such person did not know, and in the exercise of reasonable care could not have known, of the untruth or omission ***is liable to the person buying the security from such person, who may sue to recover the consideration paid for the security, together with interest at the statutory rate from the date of payment, costs, and reasonable attorney fees***, less the amount of any income received on the security, upon the tender of the security, or is liable for damages if the buyer no longer owns the security. Damages are deemed to be the amount that would be recoverable upon a tender, less the value of the security when the buyer disposed of it, and interest at the statutory rate from the date of disposition. (Emphasis added.)

> iii. <u>The Bankruptcy Court Found False and Misleading Statements and Omissions of Material Facts in Connection in the Sale of Y&K Sun Stock to the Kims.</u>

In finding that the Suns made false representations and material omissions pursuant to Section 523(a)(2)(A), this Court found that the Suns made false and misleading statements in connection with the sale of Y&K Sun shares to the Plaintiff and in connection with the exchange of Y&K Sun shares for the S&B Nova Note:

> The evidence clearly shows both Suns made material false representations and omissions to the Kims. Specifically, H. Sun represented the Kims' $900,000 would be spent on the JCRS Property. Instead, Y. Sun convinced Y. Kim to give her a $900,000 check, which Y. Sun deposited in her separate account. The Suns then spend the $900,000 as they chose. H. Sun admitted only about

> $57,137 of these funds actually went to the JCRS project. Y. Sun therefore misled Y. Kim as to where the funds were deposited, and H. Sun misled the Kims as to how the money was to be used.
>
> Thereafter, H. Sun convinced the Kims to return the [Y&K Sun] shares in exchange for the interest in the S & B Nova Note, but failed to inform them the note was subordinate to the Hanmi Bank note. While it is true the Kims received income payments from S & B Nova for several years, the failure to inform them of a $1.7 million senior lien on the note's collateral significantly misrepresented the risk of the investment.

(*Id.* at p. 14 of 26.)

The foregoing findings by the Court support the proposition that, in connection with transactions between their wholly-owned corporation Y&K Sun and the Kims, the Suns made false and misleading statements of material facts and omissions to state material facts in violation of § 11-51-501(1)(b) in connection with both the sale of Y&K Sun stock to the Kims, and the reacquisition of the Y&K stock in exchange for the S&B Nova Note.

Proof of scienter, or intent to defraud, is not required to establish liability under § 11-51-501(1)(b). *Black Diamond Fund, LLLP v. Joseph*, 211 P.3d 727, 736 (Colo. App. 2009)("...the statute separately addresses civil liability solely for a violation of section 11-51-501(1)(b), providing liability [under] §11-51-604(4), C.R.S. 2008. This subsection does not expressly require intent to defraud, or recklessness, to establish the seller's liability.") Although not a requirement for liability under this section, scienter, or intent to deceive, is an element of § 523(a)(2)(A) of the Bankruptcy Code, and was found by the Bankruptcy Court in its Order, as set forth above.

The Kims testified that would not have invested had they known that their $900,000 were going to the Suns individually. Order, pg. 12 of 26. They did not know that the Suns misrepresented or omitted material facts as required by § 11-51-604(4). *Id.*, at pg. 13 of 26.

    iv.    <u>The Materiality of the Facts Misrepresented and Omitted Has Already Been Determined.</u>

The Colorado Supreme Court has construed the term "materiality," for purposes of § 11-51-501(1), as follows: "A misrepresented or omitted fact is considered material ... if there is a substantial

likelihood that a reasonable investor would consider the matter important in making an investment decision." *Goss v. Clutch Exchange, Inc.*, 701 P.2d 33, 36 (Colo.1985). "Whether or not the misrepresented or omitted fact is important turns on whether a reasonable investor would regard it as significantly altering the `total mix' of information made available." *Id*. (citing *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976)). *See also Basic Inc. v. Levinson*, 485 US 224, 240 (1988) ("[M]ateriality depends on the significance the reasonable investor would place on the withheld or misrepresented information.")

The Kims testified at the trial, and the Court noted, specifically for purposes of the elements of fraudulent representation, the Kims' testimony that they would not have invested their $900,000 had they known the funds were going to the Suns individually, not Y & K Sun, Inc. *Id*. at p. 12 of 26. Thus, this Court has already determined that the misrepresentations and omissions made by the Suns to the Kims for the purpose of inducing them to invest in Y&K Sun were material.

  v. <u>The Violations of the Colorado Securities Act Occurred by Y&K Sun.</u>

The actions, representations and omissions made by the Suns relating to selling the stock of Y&K Sun to the Kims, as well as reacquiring the stock from the Kims, were not just made individually, but in their capacities as officers, directors and shareholders of Y&K Sun. It is axiomatic that a corporation, although a legal entity, cannot act except through its authorized officers or other representatives. *Hoang v. Arbess*, 80 P.3d 863 (Colo. Ct. App. 2003) at 867. Mrs. Sun was an officer and director of Y&K Sun, and signed the Stock Purchase Agreement on behalf of Y&K Sun. As the Court found, the guise of investment in Y&K Sun was used to perpetrate the fraud on the Kims, both in connection with the initial $900,000 investment, which the Kims believed were going to Y&K Sun, and then in connection with the reacquisition of the Y&K Sun stock.

## II. THE KIMS ARE ENTITILED TO ATTORNEYS FEES UNDER BOTH COLORADO SECURITIES ACT § 11-51-604(3) AND UNDER COLORADO SECURITIES ACT § 11-51-604(4)

Colorado Securities Act § 11-51-604(3) provides liability for attorneys fees as follows:

> "…in connection with the violation for such legal or equitable relief that the court deems appropriate, including rescission, actual damages, interest at the statutory rate, costs, and ***reasonable attorney fees***." Colorado Securities Act § 11-51-604(3).

Colorado Securities Act § 11-51-604(4) provides liability for attorneys fees as follows:

> "…who may sue to recover the consideration paid for the security, together with interest at the statutory rate from the date of payment, costs, and ***reasonable attorney fees***, less the amount of any income received on the security…" Colorado Securities Act § 11-51-604(4).

### a. Attorneys Fees Are Permissible To Be Assessed When Approved By Statute.

Attorneys fees are not always allowed to parties in Court proceedings. However, when a statute authorizes courts to grant attorneys fees, they are allowed. In *Alyeska Pipeline Service v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975),* the Supreme Court ruled that a trial court should consider awarding attorney's fees only when expressly provided by statute. Colorado follows this rule, only allowing attorneys fees by statute. As stated:

> " In the absence of a statute or private contract to the contrary, attorney **fees** and costs generally are not recoverable by the prevailing party….". *Bunnett v. Smallwood*, 793 P.2d 157 (Colo. 1990) at 160, citing favorably Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616-17, 44 L.Ed.2d 141 (1975); Cement Asbestos Prods. Co. v. Hartford Accident & Indem. Co., 592 F.2d 1144, 1148 (10th Cir.1979); Buder v. Sartore, 774 P.2d 1383, 1390 (Colo.1989); Beebe v. Pierce, 185 Colo. 34, 38, 521 P.2d 1263, 1265 (1974).

Colorado Securities Act § 11-51-604(3) provides for attorneys fees "that the court deems appropriate." In contrast, § 11-51-604(4) provides that the buyer "may sue may sue to recover the consideration paid for the security, together with interest at the statutory rate from the date of payment, costs, and reasonable attorney fees." Hence, fees under § 11-51-604(4) are mandatory, if the other elements of the section are met. Under either or both sections, "reasonable attorneys fees" may, be assessed against Y&K Sun.

8

### b. Only Prevailing Parties Are Able To Receive Attorneys Fees And Should Receive Attorneys Fees When Authorized By Statute.

To avoid confusion, Courts clearly hold that prevailing parties are entitled to attorneys fees. As stated:

> Congress intended to permit the . . . award of counsel fees only when a party has prevailed on the merits." Hanrahan v. Hampton, 446 U. S. 754, 758 (1980)

In *Texas State Teachers Assn. v. Garland Independent School Dist*., 489 U. S. 782 (1989), the Supreme Court defined what a prevail party is as follows:

> "[T]o be considered a prevailing party within the meaning of § 1988 the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." ID. at 792.

The Court went on to state that "[t]he touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties." Id., at 792-793. Because the Judgment entered against Y&K Sun by the Kims altered the legal relationship between them by giving the Kims a judgment against the Suns and their estate of which the Y&K Sun stock is part of, the Kims qualify as a prevailing party. The Supreme Court confirmed that in *Hewitt Et Al. V. Helms*, 482 U.S. 755 (1987), by defining a prevailing party as one who "…must obtain an enforceable judgment against the defendant from whom fees are sought." Hewitt supra at 760.

The importance of the status of a prevailing party is very clear. As stated:

> It can thus be taken as established, …a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances. *Christiansburg Garment Co. V. Equal Employment Opportunity Commission.* 434 U.S. 412 (1978) at 417.

Unless there are special circumstances that would deny the award of fees, the Kims are to be awarded attorneys fees against Y&K Sun. Since there are no special circumstances that would mitigate against the Kims, they must receive attorneys fees.

9

### c. The Factors The Court Must Weigh In Assessing Fees Involve Reviewing The Work The Attorneys Performed In the Specific Case.

When a Court is considering awarding attorney fees, a number of factors must be considered. "This evaluation must include the nature of the claims raised and the significance of the issues on which the plaintiff prevailed in comparison to the litigation as a whole. Among others, it is also appropriate for the trial court to consider the factors it would weigh in adjudging what "reasonable" attorney fees would be if fees were awarded.." *City of Wheat Ridge V. Cerveny*, 913 P.2d 1110 (1996) at 1115. An enumeration of those factors is detailed in Colorado Code of Professional Responsibility, Co.C.P.R. DR 2-106(B) as follows:

> "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly. (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer. (3) The fee customarily charged in the locality for similar legal services. (4) The amount involved and the results obtained. (5) The time limitations imposed by the client or by the circumstances. (6) The nature and length of the professional relationship with the client. *1116 (7) The experience, reputation, and ability of the lawyer or lawyers performing the services. (8) Whether the fee is fixed or contingent." *Mau v. E.P.H. Corp.*, 638 P.2d 777, 779 (Colo.1981).

These are the factors enumerated in Colorado.

Federal Courts have simplified this analysis considerably. "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley Et Al. V. Eckerhart Et Al.*, 461 U.S. 424 (1983) at 43. An award of attorney's fees must be reasonable. [*Brillhart v. Hudson*, 169 Colo. 329, 455 P.2d 878 (1969)] and the determination of reasonableness is a question of fact for the trial court and will

not be disturbed on review unless it is patently erroneous and unsupported by the evidence. *Pierce v. Nier*, 138 Colo. 402, 334 P.2d 440 (1959).

In conjunction with the submission of this brief, the Kims will be filing their amended proof of claim containing the billing involved in representing the Kims broken down by time and rate. The complexity of the issues involved, the necessity to preclude other employment, the hoops that the Suns have made the Kims jump through to collect, and the result in favor of the Kims, justifies the Court in awarding all the fees requested by the attorneys for the Kims in relation to their Colorado Securities Act claims. At any time, the Suns could have stopped the multiple proceedings they have gone through to keep control of the investment they swindled the Kims out of. The attorneys for the Kims have relentlessly pursued the Suns, and spent vast sums following the Suns through the laborious process they have put the Kims through. The Kims' deserve to have all of their attorneys fees granted.

### d. **Attorneys Fees are Routinely Granted in Actions Based on Securities Fraud in Colorado.**

In Colorado, securities fraud cases are very often subject to arbitration through the Financial Industry Regulatory Authority, Inc. ("FINRA") which is a private corporation that acts as a self-regulatory organization. Attorneys fees are routinely granted in these proceedings to prevailing parties. In *Padilla V. D.E. Frey & Company, Inc*., 939 P.2d 475 (1997), a panel of NASD arbitrators awarded Padilla $1 million, consisting of $612,018 in compensatory damages, $78,660 in interest thereon, $91,154 in attorney fees, and $218,168 in punitive damages. The district court subsequently confirmed the award and entered judgment on it. In *David D. Barrett, V. Investment Management Consultants, Ltd*., 190 P.3d 800 (2008), the Court held that because the arbitrators in this case were authorized to award attorney fees under the law governing the arbitration proceeding (which was the Colorado

11

Securities Act) , the district court confirmed the arbitrators award because of the statutes governing attorneys fees contained in the Colorado Securities Act.

Wherefore, the Kims request that this Court find liability under § § 11-51-604(3) and 11-51-604(4) of the Colorado Securities Act, and award attorneys fees in the amount requested in their amended proof of claim and for such other relief as his Court sees fit to grant.

DATED this 27th day of February, 2017.

                                          Respectfully submitted,
                                          BKN MURRAY, LLP.

                                          /s/ *Michael J. Davis*
                                          Michael J. Davis, Atty. Reg. No. 44287
                                          6795 East Tennessee Avenue, Suite 330
                                          Denver, Colorado 80224
                                          Tel: 303-758-5100
                                          Fax: 303-758-5055
                                          mdavis@bknmurray.com

                                          ATTORNEYS FOR THE MOVANTS

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th of February, 2017, a true and correct copy of the foregoing Brief On Issues Relating To Colorado Securities Fraud Liability And Attorneys Fees was served via PACER, email, and/or United States Mail, first- class postage pre-paid thereon, and addressed to the parties identified below:

Andrew D. Johnson
Onsager Guyerson Fletcher
1801 Broadway, Suite 900
Denver, CO 80202

Alison Goldenberg,
US Trustee Office
1961 Stout Street, Ste 12-200
Denver, CO 80294

                                          *Michael J. Davis*
                                          Michael J. Davis